1817.

FISHER and another *against* LARICK and others.

*Sunbury.*

IN ERROR.

*Monday,*
*June 16.*

ERROR to the Common Pleas of *Union* county.

This case was argued by *Bellas* and *Fisher*, for the plaintiffs in error, and *Hall* and *Watts*, for the defendants in error.

TILGHMAN C. J. *Elizabeth Larick* and others, plaintiffs below, claimed under a warrant to *William Gill*, dated 12th June, 1772, " for 300 acres, adjoining the lower line of *An-* " *drew Allen's* survey," &c. They gave evidence, tending to prove, that *Gill* had commenced an improvement, a short time before the date of his warrant, that the warrant was, very soon after its date, put into the hands of *William Maclay*, deputy surveyor, in order that a survey might be made thereon, and that a dispute having arisen between the said *Gill*, and *John Lee*, the owner of a location, dated 3d *April*, 1769, who claimed the land which *Gill* wished to have surveyed on his warrant; a compromise took place, whereby a line of division was fixed, and surveys were made accordingly both for the said *Gill*, and the said *Lee*. That the land in dispute, was included in *Gill's* survey. No survey however was returned by *William Maclay*, on *Gill's* warrant; nor was any return of survey made on that warrant until 27th June, 1793, when it was returned by *Frederick Evans*, deputy surveyor. The plaintiff also gave evidence of long possession according to the said line of division. The defendants claimed under a location, in the name of *Christian Ewing*, dated 3d *April*, 1769, for 300 acres adjoining one " *Allen*, near *Susquehannah.*" A survey of 270 acres, including the land in dispute, was returned on this location, for *John Lee*, July 10, 1779, and in the return, it is said, that the survey was made 29th *May*, 1772. This survey adjoins the land of *John Allen*, which lies on the *Susquehannah.* The assertion in *Maclay's* return, that the survey on *Ewing's* location was made 29th *May*, 1772, was contradicted, by parol

*Marginal note:* If a Judge in answer to questions of law, pertinent to the issue, states, that " so far as they apply, they are law, but the great matter is their application," the answer is too vague, and is not giving such instruction to the jury as the party had a right to require. Where a man sits down on land without warrant or location, and after a small improvement moves off; or barely takes out a location, and suffers a considerable time to elapse without doing any thing, he may be presumed to have relinquished the intention of purchasing; but where a man has put his location into the hands of the deputy surveyor, paid the surveying fees, and had the survey returned, a relinquishment of his title will notbe presumed, without very strong circumstances.

1817.

FISHER
and another
*v.*
LARICK
and others.

evidence produced by the plaintiffs; and the merits of the cause seem to rest on the question of a division line having been fixed, or not, between *Gill* and *Lee* in the summer of the year 1772. Nevertheless, it was conceived by the defendant's counsel, that several points of law, arose from the evidence, on which it was necessary that the opinion of the Court should be delivered to the jury; and an opinion was asked on ten propositions. That the counsel of either party has a right to ask the opinion of the Court, on any matter of law pertinent to the issue, and that the denial, or withholding of such opinion, is error, are principles too well settled, to admit of dispute. They are not disputed by the counsel for the defendants in error, but it has been contended, 1. that the questions proposed, have been sufficiently answered by the Court; and 2. that there was no obligation to answer them, because they were not pertinent to the issue.

1. The answer of the Court was in the following terms : " So far as the questions of law, stated by defendants' coun- " sel, apply, they are law, but the great matter is, their appli- " cation." This certainly was not giving to the jury, such instruction as the defendants' counsel had a right to require. The answer is too vague, and leaves the jury too much at a loss. In short they would have to judge for themselves. It only remains then, to consider, whether any of the questions proposed were pertinent to the issue. Without going through the whole of them, I shall advert to the second and the last. The second is, " that a person who takes out a warrant with- " out mentioning an improvement cannot carry back the com- " mencement of his title, to a time prior to the date of his " warrant." A very little consideration will shew, that this question was directly pertinent to the issue. *Ewing's* location was very loose, " *adjoining one Allen, near Susquehan-* " *nah.*" So loose, that if he kept it in his pocket from 3d *April*, 1769, till *May*, 1772, he would be postponed to any person whose title commenced prior to the survey made on that location. Now *Gill* had *commenced an improvement* prior to that survey, (or at least he had given evidence tending to prove it,) so that if his title could be carried back to the *commencement* of his improvement, the law would be clearly in favour of the plaintiff. It was very material, therefore, to the defendant, that the jury should be left in no doubt on that subject. But the plaintiffs *now* say, that they never pretend-

ed to carry back their title beyond the date of their warrant, but laid their foundation solely on the warrant. This plea will not however avail them; because, I perceive, that the Judge told the jury, " that the plaintiff rested his pretensions " principally upon an improvement commenced in or before " the year 1772. And that the plaintiff had given in evi- " dence, *from the commencement of his improvement, one con-* " *tinued possession of it till* 1798," &c. It was certainly of importance, therefore, that the jury should receive instruction on this point. The last point proposed to the Court was, " that an agreed line in 1772, will not affect a purchaser " for a valuable consideration, and without notice, in 1806; " and that information, *that the title might be disputed,* is not " sufficient notice of such line, nothing particular being said " respecting it."

The plaintiffs had but a weak case, unless they proved, that the line had been agreed on; but even if that proof was made, what effect such a parol agreement would have on a purchaser without notice, and what circumstances were to be considered as legal notice, were questions bearing immediately on the merits of the cause. I am, therefore, of opinion, that there was error, in not instructing the jury, on the points proposed to the Court, by the defendants' counsel. I am also of opinion, that there is error, in that part of the Judge's charge, in which it is said, that if *John Lee* permitted *Hain,* (who had purchased the title of *Gill,*) to go on working the land in dispute, without disturbing him, or bringing an action against him, it was a question for the jury, whether he had not *abandoned his survey. Lee's* survey was made in 1772, and returned in 1779, and in 1780 he was killed by the *Indians.* There was nothing like an abandonment in the case. Questions of fraud sometimes arise, where the owner of land stands by, and sees an ignorant person make valuable improvements. But fraud and abandonment, are things very distinct, and to confound them, is to lead the jury into an error. A man who sits down upon land, without warrant or location, and after a small improvement moves off; or a man who barely took out a location, (for which he paid but seven shillings *fees of office,*) and suffered a considerable time to elapse without doing any thing, may very well be presumed to have relinquished the intention of purchasing the land; but, where a man has put his location

VOL. III.—S s

into the hands of the deputy surveyor, *paid the surveying fees,* and *had the survey returned,* the circumstances must be very strong indeed from which the laws would presume, that he had relinquished his title to the land, and thrown it back on the proprietaries. No such circumstances existed in the present case, and therefore it was improperly submitted to the jury. I am of opinion, upon the whole, that the judgment should be reversed, and a *venire facias de novo* awarded.

GIBSON J. The plaintiff founds his title on an indescriptive warrant of the 12th *June*, 1772, on which a survey was returned into office the 29th *June*, 1793. But it does not appear by the return, at what time the survey was actually made. Corresponding marked lines are found on the ground, which would seem, from blocking the line trees, to have been made in 1772. Although evidence was given of an improvement made by those under whom the plaintiffs claim, prior to the date of the warrant, it is not pretended it will carry back the inception of their title, to the commencement of such improvement. Hence the two first and fourth points made by the defendants' counsel were not only pertinent, but essentially important. The Court should have informed the jury, that no right vested in *Gill,* or those claiming under him, by his warrant, unaided by the supposed consentable line, unless he had a survey made on it, before that of the defendants on their indescriptive location. And this was the more necessary, as the Court informed the jury, that the plaintiffs founded their title on an improvement right. I cannot say the law was fully laid down on this point.

The defendants claim, by virtue of an indescriptive location of the 3d *April*, 1769, on which, by the return of the deputy surveyor, it appears a survey, including the land in dispute, was made on the 29th *May*, 1772. The actual time of making this survey, as well as that of the plaintiffs, was respectively contested by the parties, and it was an inquiry proper for the jury. For priority of survey, if the case were unaffected by other circumstance, would be decisive of the rights of the parties. It was therefore proper, that the jury should be fully instructed as to the law on the subject, and the Court was requested to do so. There was evidence, however, of the establishment of what in *Pennsylvania* is

technically called a consentable line in 1772, by agreement between *Lee* and *Gill*, under whom the parties respectively claim, by which the land in dispute was thrown within the limits at present contended for by the plaintiffs.  This consentable line, if it really were established, would conclude the parties to the agreement, and all claiming under them having notice of it; but it will not affect a purchaser for a valuable consideration without notice.  It would be necessary for this purpose, particularly in case of a purchase of the legal title at sheriff's sale, to shew actual notice, or, what is equivalent, a visible boundary, accompanied with a correspondent notorious possession.  This principle was fully established in the *lessee of Billington* v. *Welsh*, 5 *Binn.* 129, a case in many of its features like the present.  What were the facts, was a question for the jury on the evidence, and the defendants claiming under *Lee*, by virtue of a sheriff's deed, were entitled to have the direction of the Court as to the law.  The great point was, not as stated by the Court, merely whether such a line was actually agreed upon by the parties, but also, in case it were so, whether *Swineford*, when he purchased *Lee*'s tract at sheriff's sale, had actual or constructive notice of it.  The charge, as to this part of the case, had a direct tendency to mislead the jury, the whole law on the subject not being laid down.

The return of *William M'Clay*, the deputy surveyor, is strong evidence that *Lee*'s survey was made on the 29th of *May*, 1772, and it appeared by an account settled between him and *Lee*, that the former had received his fees shortly after.  Unless, then, the title of *Gill* intervened by a survey prior in time to that of *Lee*, there could not afterwards, under any circumstances, be an abandonment by the latter.  The Court, however, assuming as a fact, that *Lee*'s survey was the elder, left it to the jury to determine whether he did not abandon that part of his original survey, which includes the land in dispute, because, living for a certain period in the neighbourhood, he permitted *Hain*, who came in under *Gill*, to work the land without disturbing him in the possession.   At this time abandonment was out of the question; the direction was therefore wrong.

Under the levy and sale to *Swineford*, I have no doubt but all *Lee*'s interest in the tract passed.  The levy was on

1817.

FISHER
and another
*v.*
LARICK
and others.

*the tract*, and being described as containing " 200 acres more or less," will surely not restrain its operation to a part of the tract, in case it should turn out to contain 270 acres and allowance. But if it were otherwise, an importance was given to the matter which it did not deserve, and which directly tended to deceive the jury as to the law. It was immaterial to the defendant, for the purpose of defence in this action, whether the land in dispute belonged to him or *Lee*'s heirs. In either event the plaintiff could not recover, and the Court were requested so to charge the jury. This was not done. It appears to me, that all the points proposed to the Court for decision, were material and pertinent, and arose directly out of the evidence. It was not sufficient to state that these propositions were law as far as they were applicable to the evidence, without informing the jury how far they were applicable, and in what respect they were inapplicable. When questions of law are propounded in connexion with the evidence, it is the duty of the Court to state the rule, and apply it to the evidence. To deduce the fact from the evidence is the business of the jury.

On the whole, I am of opinion, that the law was not as fully stated to the jury as it ought to have been ; in consequence of which the jury may have been, and probably were, led into error. The judgment, therefore, must be reversed.

DUNCAN J. gave no opinion; having been counsel in the cause.

Judgment reversed, and a *venire facias de novo* awarded.