## THOMAS CHAMBERS *against* JONATHAN MIFFLIN.

### IN ERROR.

A precisely descriptive warrant must be followed up with reasonable attention, in order to give title from its date. So of a vague warrant, from the time of survey.

If an owner of a vague or removed warrant, has suffered it to remain unreturned for more than twenty-one years, and during that time has exercised no act of ownership upon the land, the state or any person has a right to consider it as derelict, and whoever purchases and pays for the land, under such circumstances, has a good title.

Query.—Whether the law is not the same in some cases, as to precisely descriptive warrants.

This was a writ of error to the common pleas of Franklin county, to remove the record and judgment of that court, in an action of

Thomas Chambers *v.* Jonathan Mifflin.

ejectment brought by *Jonathan Mifflin*, the defendant in error, against *Thomas Chambers*, the plaintiff in error. In the court below the verdict and judgment were for the plaintiff, *Mifflin.*

The claims of the respective parties were as follows. The title of the defendant in error and plaintiff below, *Jonathan Mifflin*, originated upon a warrant granted to *Robert Long*, dated 15th April, 1763, for two hundred acres in *Black's Gap*, in the South mountain, including some springs, supposed to be the head waters of the Conococheaque creek, in Cumberland county. It was not conceded by the defendant below that a survey had ever been made on this warrant, but it appeared in evidence, that in 1776 and afterwards, applications were entered calling for lands adjoining *Robert Long*, and in 1792, a warrant, in which it was alleged Captain *Benjamin Chambers* had an interest, was taken out, calling for *Robert Long*. No survey was returned on this *Robert Long* warrant, until April, 1797, and so far as could be ascertained, no draft of any survey had been in the office of the deputy surveyor of the county. *Robert Long* conveyed to *Jonathan Mifflin*, by deed dated 20th July, 1796, and he obtained a patent from the commonwealth, 14th February, 1812.

The plaintiff in error, *Thomas Chambers*, claimed under a warrant to *George Chambers*, dated 29th December, 1792, for two hundred acres, at the Shippensburg fork of Conococheague creek, on both sides of the great road from Chambersburg to York. On the 5th of April, 1793, a survey was made on this warrant, and returned soon after. Some proof was given that at the time this survey was made, the father of the plaintiff in error knew of the survey of *Robert Long*. There was a regular chain of title from the warrantee to the plaintiff in error, *Thomas Chambers.*

On the 19th July, 1796, *Long* and *Mifflin* exhibited to the board of property, a draft of a survey of this land, and their warrant, and the board granted them an order of re-survey, and directed the deputy surveyor to make a return, noting the interference, if any, with any other claim. After this, to wit, 12th April, 1797, a draft of a survey on *Robert Long's* warrant, dated 4th April, ——; and signed for *John Armstrong*, by *William Lyon*, was taken to the surveyor general's office, and was accepted by the surveyor general, and filed. Soon after this, a copy of the order of the board of property before mentioned, was sent to the deputy surveyor of the county, included in which was a copy of this draft by *William Lyon.*

*John Armstrong* had not been deputy surveyor since 1776. Nothing was done in pursuance of this order of the board of property.

No actual improvement was made upon the land until about the year 1808. This suit was brought in 1825.

Several errors were assigned in this court, to the charge of the court below to the jury. Those that are material to the decision made by this court, are as follows:

(Thomas Chambers *v.* Jonathan Mifflin.)

The court errcd in saying, " that if *Benjamin Chambers* had notice of the survey on *Long's* warrant, the delay of the deputy surveyor to return the survey, will not affect the plaintiff's title, whether that delay proceeded from neglect of the officer, or the omission to pay the fees.

In not directing the jury, as requested, that *Long* was guilty of negligence in not causing the survey to be returned, and that such omission was calculated to mislead and impose on purchasers from the commonwealth.

In not directing the jury as requested, that if *Long* withheld his survey from the office, for the purpose of keeping it open for change, it would have no validity against a person knowing it, until after the return and acceptance.

In not instructing the jury that they might presume that *Long* had abandoned his survey as made.

*Crawford*, for the plaintiff in error.—A warrantee, after he has procured his warrant, has certain duties to perform; he must provide chain carriers and provision, and he must pay the fees of the deputy surveyor, to entitle him to have his survey returned: and if any of these duties are omitted, by reason of which his warrant is not duly executed, and his survey returned, such omission will affect his title; and the court erred in laying down the law differently to the jury. *Fisher* v. *Larick, et als* 3 *Serg. & Rawle*, 321. *Boyles* v. *Kelly*, 10 *Serg. & Rawle*, 217, *Lessee of Lauman* v. *Thomas*, 4 *Bin.* 59. And in all these cases, the paying of the fees of the deputy surveyor is treated as a matter of necessity.

The direction of the court, that an abandonment could not be presumed, particularly as the plaintiff had his survey returned, and a patent issued upon it, was erroneous. *Boyle's* v. *Kelly*, 10 *Serg. & Rawle*, 217. *Watson* v. *Gilday*. 11 *Serg. & Rawle*, 340. But it was calculated to mislead the jury; for the survey of the plaintiff was not returned till 1797, three or four years after the defendant's survey was made and returned, and his patent did not issue for nineteen years afterwards.

*Dunlop*, for defendant in error.—The warrant to *Robert Long*, is not a shifted warrant, but a vague one, calling for land in *Black's Gap*, and it is laid upon land as high up the waters called for in the description, as it could be, without going out of the county of Cumberland. The difficulties of the cause are removed by the conclusion that our warrant is a vague one. *Moore* v. *Shaver*, 6 *Serg. & Rawle*, 130. *Lilly* v. *Paschal*, 2 *Serg. & Rawle*, 394.

Even if it was a shifted warrant, it is sufficiently proved that captain *Chambers* had notice of the survey. The jury believed and found accordingly, either that the warrant was vague, or that captain *Chambers* had notice; that he did know of *Long's* survey is certain, from the fact, that another survey of his called for *Robert Long's* survey on the south; and although this warrant and sur-

(Thomas Chambers *v.* Jonathan Mifflin.)

vey is in the name of *Joseph Chambers,* yet all the circumstances in the cause shew that captain *Chambers* was part owner of it. All the adjoining surveys made at the time call for *Robert Long.* The court charged the jury in favour of the defendant on this point, for they said that captain *Chambers* must have had notice prior to the commencement of his title, to be effected by *Long's* title.

*M'Culloch* on the same side. The request to the court to charge the jury, that the conduct of *Long* was calculated to mislead and impose on purchasers, was a question of fact and not of law, and therefore this court will not reverse the judgment, even if the court below were wrong in their opinion.

The return of a survey is but *notice* to every body of the appropriation of the land included within that survey; if therefore captain *Chambers* knew of *Long's* survey, this knowledge as to him, was tantamount to a return and acceptance.

There is no such thing known in the history of the land titles of Pennsylvania, as gathered from our books, as the doctrine that a jury can presume the abandonment of a warrant upon which money has been paid. The doctrine of abandonment only applies to improvement rights or locations, where no money has been paid; and in those cases it may be presumed, because the giving up of possession is giving up every thing which the improver had; but where money is paid, it cannot be presumed that it is abandoned. It has been decided in the case of *Mitchell* v. *Mitchell,* 4. *Bin.* 180, that when money has been paid on a warrant, the commonwealth has no right to vacate that warrant.

*Chambers,* in reply.—The warrant of *Robert Long* was not intended for the land in dispute, but for land including the springs and head waters of the Conococheague creek. A right founded upon a shifted warrant and survey is an imperfect right, until it is returned and accepted, for until then the warrantee might change his survey and lay it upon other lands; or the proprietaries might refuse to accept it, having previously given no assent to the appropriation of the particular lands surveyed.

This imperfect right, therefore, which either party may change, until the survey is accepted, is such a right as may be abandoned. And the only difference between the presumption of an abandonment of an improvement or location, when little or no money is paid, and of a warrant where money is paid, is in the *amount* of evidence required to support the presumption in one case and the other.

If *Long* had once abandoned the land, he never could renew his claim afterwards to the prejudice of another, who had taken out an office right.

The extent of our request to the court was not to instruct the jury that there was an abandonment, but, " that the jury may presume from the facts that there was an abandonment."

(Thomas Chambers *v.* Jonathan Mifflin.)

The opinion of the court was delivered by

Huston, J.—(Here his honour recapitulated the facts in the cause.)—In the argument of this case here, and I may suppose in the court below, all the cases on precise, vague and removed warrants were cited. See *McKinney* v. *Houser*, 2 *Smith* 190. *Duncan* v. *Curry*, 3 *Bin.* 14, and *Lauman* v. *Thomas*, 4 *Bin.* 58. See also 3 *Serg. & Rawle*, 321–2. 10 *Serg. & Rawle*, 17. 15 *Serg. & Rawle.* 224. *Maus* v. *Montgomery.*

And if this suit had been brought forty years ago, or if the title of defendant below, had commenced within a few years after the plaintiff's, there would have been no error perhaps in the charge. By recurring to those cases in which this matter has been discussed, it will appear, that in *Lauman* v. *Thomas*, the plaintiff's warrants were dated 27th of April, 1774, surveyed in May, 1774, when returned, was uncertain; but certainly before the 12th January, 1792, when a patent issued. The defendant's title commenced in December, 1774, and his patent in 1776. In 3 *Serg. & Rawle*, 321, one title was the 3d of April, 1769, surveyed in 1772, the other a warrant in 1772. In *Duncan* v. *Curry*, both titles were dated 3d April, 1769, one surveyed in 1771, the other in 1774, and not returned until after 1795, and was clearly postponed.

In short, all those cases presented something very different from the present.

There was at one time but little difference in the titles, and in most of them some possession or ownership was alleged to supply the want of return.

While the country was unsettled, a wilderness, a few years did not give much strength to a title. The war and desolation along the frontiers, on account of Indian depredations, delayed the settlement, and occasioned allowances for not pursuing titles; rules laid down in 1772–3–4, were again adopted, as applicable after the war, in 1785–6–7, and following years. Though it was most palpable, that the reason for indulging a person in not getting a survey returned in 1774 or '5, was no reason at all for indulging him after 1790. The deputy surveyors, before the war, had died, had removed, or were superannuated. Their papers were scattered, some of them displeased at not being in office, and their refusal to return surveys was some excuse. Since the war their bonds could have been sued, or the board of property would have compelled them to have returned surveys.

The doctrine of our courts has not been well understood, for when it is said, a precisely descriptive warrant gives title from its date, a vague one from the time of survey, &c. it is sometimes added, and always understood, *provided it is otherwise followed up with reasonable attention.* It is not, and never was the law, that on taking out a warrant, and procuring a survey, and then neglect-

(Thomas Chambers *v.* Jonathan Mifflin.)

ing or refusing to pay the surveyor's fees, which was always necessary to procure a return, that a man could hold the land, without attending to it in any way, for an indefinite length of time.

Although a warrant has been surveyed, yet if not returned, the owner may change its lines, or change its place altogether, and lay it on any other vacant land any where near: until it is returned, the state has no power to collect arrears of purchase money.   It never can be that a man can wait thirty or forty years, and all that time be able to say this is my land if I please, and not mine unless I please.   I will take this land and pay the state for it, if the country improves, and it rises in value, or if somebody will render it valuable by improvement: but I will not take it and pay the purchase money, unless something occurs to render it more valuable.   Nor is it the law, that a man can commence procuring a title from the state, and, from pure negligence, leave it in such situation, for more than twenty years, as that he is not bound to take it, and no one else can safely take it.   We have full and ample provision on this subject by our legislature.   The act of the 9th of April, 1781, for establishing a land office, provides, in section nine, that all surveys heretofore made shall be returned into the surveyor general's office, within nine months, and prescribes a penalty on any deputy surveyor, *to whom his fees shall be paid,* who neglects to return. This continued till 5th April, 1782; when it was enacted, " It shall be lawful for the surveyor general of this state to receive returns of such surveys, as shall appear to him to have been faithfully and regularly made, from the said late deputy surveyors, their heirs or legal representatives, for such further period, *as to him shall seem just and reasonable.".* And a saving for those who had neglected to pay fees and procure returns under the last cited act.   The act of 8th April, 1785, section eight, prescribes that every deputy surveyor, shall, as soon as conveniently may be after survey made, *on receiving his fees,* return said survey into the surveyor general's office; and that every survey made before the 31st December, in each year, and not returned before the last of March in next year, shall be void as to future surveys, which shall be returned sooner, and a penalty on the deputy surveyor, if the neglect is by his fault.   Although this act has been supposed to be only applicable to lands in the purchase of 1784, and east of the Allegheny river, yet it is important, as shewing the sense of the legislature on the necessity of a return of survey in due time, and the evils incident on neglect in this particular.   Then came the act of 4th September, 1793, which provides, that, "All returns of surveys which have been actually executed, since the 4th July, 1776, by deputy surveyors, while they acted under legal appointments, shall be received in the land office, although the said deputy surveyors may happen not to be in office at the time of the return or returns being made: provided *that no returns be admitted, that were made by deputy surveyors, who have been more*

(Thomas Chambers *v.* Jonathan Mifflin.)

*than nine years out of office."* This short law is in some respects obscure when closely examined, but it further shews strongly the sense of the legislature on the subject of keeping titles in this uncertain and unfinished state. It lays down a rule which is not easily to be gotten over by the courts. Independent of this law, who will say that the act of 1782, which allows returns to be received till such period as the surveyor general shall deem just and reasonable, would keep the office open forever. .

I am aware that there are cases where plaintiffs have recovered on surveys not returned until since 1793. They will, however, be found very special cases, where the owner has proved great exertions on his part to procure returns, and fraud or accident in preventing them. I am also aware that the owners of many tracts, who have taken possession and occupied them, sold them to others who occupied them, or transmitted them to their descendants, have found no returns in the office. In such cases the land officers issue orders and have returns made yet, and rightly, for no injury is done to any one. So if land has been surveyed, and no adverse claimant, as improver, or by warrant, has any claim to the land, returns are received, and may be received, from the present deputy surveyors; but where, as in the present case, a vague or removed warrant has been surveyed, and then neglected thirty years, or even a less time, and no excuse shown, it was not within a "just and reasonable time" to receive the return, after another had bought and paid for it, as derelict. In another point of view, the title of the plaintiff below was irregular. He and *Long* applied to the board of property, who instead of accepting his draft, made out and signed by *William Lyon* for *John Armstrong*, ordered a resurvey by the deputy surveyor of the county, who was not to make a return to the surveyor general, but to that board, noting the interference, if any, with other claims. After this, the draft made out by *William Lyon* for *John Armstrong*, was carried to the office of the surveyor general, and by him accepted and filed, as a return of survey. It was entirely irregular in him so to receive and file this return. The matter was not before him, it was sub-judice; a very proper order had been made, and it is certain the board thought it not of course to accept a return of this survey. That whether it could be accepted, depended on facts to be ascertained, and the surveyor general had no right to take the matter out of their hands. In *Harris's Lessee* v. *Monks,* 2 *Serg. & Rawle,* 557, it was decided that an act of the surveyor general, respecting a return of survey in a case before the board of property, and respecting which they had made an order, was totally void. It is true that was a case in which a caveat had been entered, but the principle, that after a matter was before the board, and after they had taken order on it, it was illegal in the surveyor general to do any act inconsistent with, or superseding their order, is correct, and applies to this case.

(Thomas Chambers *v.* Jonathan Mifflin.)

*William Lyon* had no right to return a survey, even while *John Armstrong* was in office. I have no hesitation in saying that he did not make the paper in question for the purpose of being carried to the land office as a return, but for the private use of the owner. There have been cases, where a return by an assistant or deputy surveyor, has been received and filed in the surveyor general's office, as a return. I will not say such return so filed is void, but it was always an irregularity, and is particularly objectionable here, independent of other reasons.

The act of 1793, last cited, does, it is true, mention surveys made since 1776, and this was made long before. I would not infer from this, that surveys made before, might still be accepted. I rather suppose such surveys were considered as out of all reasonable time, and that it alluded to surveys under the act of 1785.

The patent does not alter the case. In this state the inquiry in an ejectment is not who has the patent, but who ought to have it. On the whole, we are of opinion, that under the acts of assembly, under the principles on which all acts of limitations are made, the return of survey ought not to have been accepted, so far as it interfered with the survey of the defendant. That although a survey before the war may yet be accepted, where possession has accompanied it, or perhaps where there is no adverse claim to the land; yet the peace and quiet of the community require, that where any owner of a vague, removed, or perhaps in some cases, a precise warrant, has suffered it to remain unreturned for more than twenty-one years; has kept it in his power to return it as laid, or change it, to pay residue of purchase money, or not to pay it; has exercised no act of ownership; has not claimed it, or returned it for taxation; the state and the citizens had a right to consider it as derelict, and whoever, under such circumstances, purchased and paid for it, has a good title. There must be an end to these half titles sometime. It cannot be at the option of an individual, for half a century, whether he will take a tract of land, or not take it; at all events, his option is at an end, when another person acquires a right to it.

Judgment reversed, and a *venire facias de novo* awarded.