The opinion of the court was delivered by
Huston, J.
The plaintiff here, who was also plaintiff below, Philip Maus, claimed on a location, dated the 3d of April, 1769, No. 2297, to Morris Turner, for three hundred acres of land in the forks of Mahoning creek, about two miles from the east branch of Susquehanna, and produced a draught of a survey in October, 1769, but which had not been returned into the surveyor general’s office until 1794. This survey began about a mile from the river, and extended up Mahoning creek, including a narrow strip of land on each side of the creek to the forks, included ten or fifteen acres ©f land which lay in the forks of Mahoning; but the great mass of the survey lay below the forks. Morris Turner conveyed to JB. Light.foot in May, 1770, and he, Lightfoot, conveyed to P. Maus in 1794. • Maus procured the survey to be returned, but *222 no possession was ever had on this title; or, if there were proof of a temporary possession by Morris Turner, this was contradicted by the testimony of other witnesses.
The defendant claimed under an application, also dated the 3d of April, 1769, No. 456, in the name of Alexander MlDonald, for three hundred acres, on the north side of the north branch of of Susquehanna, called Mahoning, adjoining Colonel Francis’s land, and about twelve miles from Fort Augusta. The plaintiff had brought a copy of the original application filed in the office, which differed slightly from the entry thereof in the surveyor general’s book; but the difference was not of material effect. The defendant alleged, that, the survey now returned for Morris Turner was in fact made for MlDonald; and, to prove it, produced a return of a survey of an adjoining tract in the name of John Bolts, made in June, 1770, and returned in January, 1771. This survey called for A. M‘Donald, as having surveyed adjoining to it, and on the land in question, in September, 1771. M‘Donald entered a caveat “against the acceptance of a survey of a tract of land on Mahoning creek, on the north-east branch of the Susquehanna river for Morris Turner, by virtue of his application, No. 2297, alleging that he hath a prior application for the same land.” A day of hearing was appointed, but nothing further was done on it until 1794, when Maus and Montgomery became owners of the contending applications, and there was a decision of the Board of Property in favour of Maus.
M‘Donald having entered his caveat, proceeded to take possession of the land; and in 1772 made a lease of it to James Semple. When this lease was offered in evidence by the defendants, the plaintiffs objected to it. The defendants stated it would be followed by proof that possession was taken under it, and kept to this hour, accompanied with bona fide and very valuable improvements. The plaintiff’s counsel requested the court, that the defendant’s counsel might state for what purpose it was offered. The defendant replied, “It is offered to show an active and diligent pursuit of our claim to the land, and for all other competent purposes.” The testimony was admitted, and a bill of exceptions taken.
The counsel for the plaintiff cited 2 Smith, 180. Lessee of Pigou v. Neville, 4 Dall. 121, Calhoun v. Dunning, 3 Yeates, 580, Eddy v. Faulkner,—to prove that where,a descriptive warrant is delivered and returned, a subsequent warrant or settlement gives no title'.
The answer was, that the plaintiff’s location is not descriptive of the land in question; that it is disputed, and can only be decided by the.jury, for whom the survey was made; that it clearly was not returned, when the defendant entered and made his improvements; and that the defendant did not enter on a subsequent war *223 rant, but on a location of the same date with the plaintiff’s, and which, being of a lower number, had preference to the defendant’s description of the land.
In fact, under the idea of an alleged abandonment by the plaintiff, or of protection to the defendant by the statute of limitations, or pretence that the plaintiff’s survey was not made on the ground, and so no notice to the defendant,'the rule laid down in the cases cited has in practice been much relaxed, if not wholly abrogated; but, admitting it in the fullest extent, it never embraced this case. The plaintiff’s survey was not laid in Ike forks of Mahoning; it was not returned. The defendant alleged his location was precisely descriptive of the land, and alleged the survey was actually made for himself. The matters disputed were matters of fact, which the jury alone could decide. The. court could not assume that the allegations of the plaintiff’s were true, for there was contradictory evidence on every fact in the cause, and, above all, the defendant did not claim by title subsequent to the plaintiff, but under one which he alleged had preference, being a lower number. His labour was not as an improvement, and to be held by improvement, but as an owner of an office title on his own land. He was not a stranger claiming subsequent, to Turner’s survey, or alleged owners claiming from them. But it is said it was also admitted for all other competent purposes, and so it ought to have been. If admitted for ci/l purposes, a doubt might have arisen. There was one other purpose for which it was competent. Mans purchased in 1794. It was competent to prove that lie actually knew of and had seen Montgomery’s fields and orchards, and house, barn, and mill, before he purchased.
David Montgomery now owns the tract which was Colonel Francis’s,—on th.is a mill had been built in 1773, which, after passing through several owners, is General Montgomery’s. The dam of this mill occasions the water to stand in ordinary times at some depth on a part of the tract in question, and at high water to overflow some of the cleared land. It was in proof it had done so more than thirty years before D. Montgomery bought the mill, and more than fifty years before the trial. But the plaintiff alleged that if he recovered, he having been out of possession all that time, could support suit against Dv Montgomery for this nuisance; whereas J. Montgomery, the defendant, had acquiesced so long that she was barred by lapse of time. On this ground, D. Montgomery was objected to, as being an incompetent witness, but the court admitted him, and this formed the second bill of exceptions.
Without deciding whether D. Montgomery can or cannot keep his dam, at the height at Which it has stood for fifty years, against the plaintiff, who did not allege that he had ever given notice to any owner of the mill, (and, if necessary, I see no difficulty in deciding it,') D. Montgomery was still a witness. He had no interest in this cause. The verdict in this suit would not' affect him; and that *224 he might by possibility be hereafter liable to an action on the case, for a matter no way connected with the title of parties to this suit, would not exclude him. It is only where the verdict could be given in evidence in the suit to he brought.' Where there is an immediate liability, in consequence of some privity between the party and witness offered, that liability to an action excludes, as in case of drawer or indorser,—grantor with warranty, and grantee, &c. See Phillips on Evidence, 42 and 56, in notes, and the cases there cited.
There were two other bills of exception, which were very properly passed over slightly,. There was nothing in either of them. There was also an exception to the charge .of the court.
After stating, the titles of the plaintiff and defendant, and their evidence, the judge said, “ If the defendant’s warrant is descriptive, it being the fortunate number in the lottery, (the lowest number,) the defendant was entitled to have a survey made for him, and equity will consider that as done which ought to have been done. The survey made shall be for the defendant, if he was by law entitled to have it.” '
The rules which have been adopted, and long adhered to, respecting these lottery orders, and, to a certain extent, respecting warrants, are to be found in our printed reports. I shall content myself with referring to1 M'Kinney v. Houser, 2 Smith’s Laws, 190; tó Duncan & Curry, 3 Binney, 14, and to Lauman & Thomas, 4 Binn. 58. These have become land-marks; the variety of facts, in different cases, may occasion, sometimes, a little difficulty in their application, but the law as laid down in those cases, could not be safely changed; nor, as I believe, would any change have made it better. The owner of an application precisely descriptive of the ground, and which, at the same time, was lower in number than any other application for the same ground, had a right to a survey of that ground, which could not be taken from him, if he pursued his claim; within what period he was bound to assert his claim, has not been precisely established; it will be found that circumstances have induced courts and juries to make different allowance in different cases; the breaking out of a war with the Indians, has suspended the time until peace was restored, and a reasonable time after; but I am safe in saying there is no case where mere lapse of time, unaccompanied by other circumstances, has been held todevest this right,in less than three years. I think a larger period has been generally allowed; and rightly, for in 1774, a notice wa$ published by the Surveyor General, see 2 Smith, 188, 9, requiring those who had theretofore neglected, to attend in the several districts, and have their surveys made. Admitting, then, and it is more than ought to be admitted, that MlDomild did not attend, or ask for a survey until 1771; if his application described the land in question, and was the lowest number, he was entitled to the survey made, or to have one made for himself; and having *225 then entered a caveat, and taken possession and continued it, he is still so entitled, on this state of facts. • '
By our-law and practice, either party may state to the court, certain positions which he contends to be law, and desire the court to deliver opinions on those points to the jury: within proper regulations, this might lead to uniformity, and certainty in the law. Hitherto, however, that has not, perhaps, been the effect. It has become too common for counsel to select a statement of facts, at least as favourable to his client as the case will warrant, and ask the court to state the law on such premises. Now this tends directly to mislead the jury, who are to consider the whole testimony, from it to collect the facts in the cause, and from the law, as applied thereto, return their verdict; it is useless, or worse, to put them on inquiring what the law would have been, if the facts had been otherwise. In the present case the plaintiff’s counsel have attempted to go further; and here, as they admit,-asked of the court to state to the jury ás facts, matters about which there was great difference, nay, even contrariety of evidence, and which could only be decided, by the jury. They have required the court to state that defendant’s location is a removed one, or at most a vagué one, and gave no title until surveyed.
It might, to a person who had not reflected on the subject, appear easy to write such a description of a tract of land, as that it must be applicable to one spot and no other. And so it is, when you have well known natural or artificial objects to which you can refer. But a man for the first time in a pathless wilderness, fifty miles from a house, ignorant of the names of the hills and creeks, or among hills and creeks which have not yet received names, will soon find it as difficult to describe definitely the tract he has selected, as it was to decide which tract he would select. The situation of his tract is pointed out by its relative situation to some known object. He takes for this object a known mountain or creek, or he gives a name to a mountain or creek not before known.or designated by any name. You read his description, and if you know the object referred to, you know where the land lies. •If you do not know the object referred to, you must have information, that is, a court and jury must have testimony, and of the truth of that testimony, or, if there is contradictory evidence of the weight of it, the jury are to decide.. The variety in the description in these applications is as great as can be conceived. Some are certain, when you know-the objects referred to: some are confused, and refer with no certainty to any precise object: some are contradictory, and some absurd. But is this such, or so clearly so, as that the court erred in this case?
The words “ called Mahoney,” in the defendant’s application, convey no precise idea, .unless you know what is called Mahoning; and at present, perhaps, there is nothing /known by that precise name. But it also calls for Colonel Francis’s land, about twelve *226 miles from Fort Jhigusta, and from .the north branch of Susquehanna. When witnesses tell you that on that branch Francis had lands, at that distance from the fort, and that a creek called Mahoning runs through Francis’s lands, you may suppose the location precise, except that the name of the creek has been misunderstood as to the terminating syllable, or mis-spelled. .When some witnesses swore that the creek, and only the creek, was called Mahoning, in 1769; that when people began to settle, the settlement was then called Mahoning; that at length the valley was called Mahoning, and in process of time the township was called by. that name; and other.witnesses say the whole valley and country was called Mahoning from the first; and a third says, that it .was neither the creek nor country which had that name, but a large deer-lick, who is to decide? The jury, surely.
In M‘Kinney v. Houser, (2 Smith, 190,) Smith, Justice, tells the jury, “Whether the plaintiff’s application is descriptive of the land in question, you only can decide.” In Duncan v. Curry, the Chief Justice says, the jury are to decide, as a matter of fact, which of the two applications is the most descriptive of the land in question, or whether either is descriptive. I admit there are cases where it would seem to be assumed by the judge, and stated to the jury, that a warrant was vague. This last happened from a real uncertainty in the description, or from facts proved, or known, or admitted to be in a certain way. Thus, in M‘Kinney v. Houser, Judge Smith says, “ The defendant’s warrant was very vague;” and yet, a few minutes before, he had told the jury they only could decide whether the plaintiff’s was so. But when' we know the facts, this is not strange. The defendant’s warrant called for a. branch of Spring creek, adjoining land of Reuben Haines. Now, the court, bar, and jury knew that Reuben Haines once owned a large body of lands on the head branches of Spring creek. This was not proved, but admitted in the cause. On other proof, as if it had been in evidence that there was but one place at which a survey could have been made on a branch of Spring creek adjoining Haines, the same words would have made it a descriptive warrant. In fine, wherever there is an examination.of witnesses, ¡as there generally is in these cases, and the witnesses differ in their testimony, it must be a question for the jury, and the judge was right. It would have been error if he had taken this matter from' the jury.
What I have said above will apply to all the other points. The plaintiff’s counsel assumed a certain state of facts on which they asked the court to give opinions favourable to their client. The Judge, uniformly, instead of assuming their statement .of facts to be true, left the facts to be ascertained by the jury; and stated the law as it would be if the facts were found one way, and as it would be if the facts were found another way; and, in doing so, did no injustice to the plaintiff. On more than one of the points *227 proposed, there would not have been error, if the judge had charged more favourably for the defendant than he did.. As all the other points made are resolvable to the principle depending on the exception to the charge, and the law is to be found in the cases above referred to, I will not repeat it.
Judgment affirmed.