STAR and others, *against* BRADFORD.

IN ERROR.

A precisely descriptive warrant, or application, gives title from its date, a vague warrant from the time of survey, provided it be followed up with reasonable diligence. The mere taking out a warrant, or application, and procuring a survey without more, gives no title. It is necessary for the warrantee or applicant, not only to have a survey made, but he should have it returned, otherwise he will be postponed in favor of an intervening right. But where the omission to have the survey returned, arises from the negligence of the deputy surveyor, and this appears by evidence, the rights of the applicant or warrantee, will not be postponed. *It seems* they will not be postponed where he takes possession after the survey, and before any right is obtained by another, continues that possession, and makes improvements.

Where a descriptive location was obtained in 1769, and a survey made, and a warrant was obtained by another in 1784, surveyed, and returned, and no return was made of the survey on the location until 1788; making an allowance for the particular circumstances arising from shutting the land office during the war of the revolution, there was still such neglect on the part of the owner of the application, as to postpone it to the title under the warrant.

Within what period a party is bound to return his survey, has not been precisely established; circumstances have induced courts and juries to make different allowances in different cases. It seems it should not exceed seven years, and that that period will be fixed in analogy to the limitation in the act of the 26th of March, 1785.

As a general rule, the question of abandonment is a fact for the jury, for it is a question of intention of which the jury alone can judge, which ordinarily depends on a great variety of facts. In such case it would be error in the court to withdraw from the jury the decision. But where the question is one of time, it is a question of law.

On the 15th January, 1812, an action of ejectment was tried, and a verdict and judgment rendered for the defendant, upon which a writ of error was issued to May term, 1812; on the 29th May, 1812, the Supreme Court reversed the judgment, on the 28th of July, 1829, the record which remained in the Supreme Court, was transmitted; and on the 22d of July, 1830, the defendant offered to plead that the suit had been abandoned, and discontinued under the above stated facts, which was over-ruled. *Held,* that on the reversal of a judgment, either party might have taken back the record; but as long as it remains in the Supreme Court the action is still pending; the defendant not having taken any steps in the cause he acquiesced in the delay, and had no reason to complain.

An entry in a book, called a book of field notes, indorsed with the name of the person who was the surveyor in 1769, found in the deputy surveyor's office, as follows: "Eronamus Henning £5," is not evidence of their payment of surveying fees by Henning.

ERROR to the Court of Common Pleas of *Schuylkill* county, in an action of ejectment brought by *Ebenezer G. Bradford*, Esq., against *Peter Star*, and others, for a tract of land in that part of *Berks* county, which was divided from *Berks* county and is now the county of *Schuylkill*. The cause had been tried on the 15th of January, 1812, and a verdict and judgment given for the defen-

(Star *v.* Bradford )

dants, upon which a writ of error was sued to May term, 1812. On the 29th of May, 1813, the Supreme Court reversed the judgment, and awarded a *venire de novo.* On the 31st July, 1826, a transcript of the docket entry of the suit in *Berks* county was filed in the prothonotary's office of *Schuylkill* county: On the 22d of July, 1830, the defendants offered to put in a plea to the jurisdiction of the Court of Common Pleas of *Schuylkill* county, and that the suit, by the facts stated, had been abandoned and discontinued. This was over-ruled by the court, and on the 21st March, 1831, the case was tried; and a verdict being given for the plaintiff the defendants brought this writ.

The plaintiff made title through *Jacob Miller* to whom a warrant issued on the 1st of October, 1784, on which a survey was made to *Michael Gunkle* on the 19th October, 1784, and on the 10th of January, 1786, a patent issued thereon to *Sheaffer*, from whom the plaintiff deduced his title by regular conveyances.

The defendants claimed, under an application, No. 3940, dated the 7th of April, 1769, to *Eronamus Henning*, "for three hundred acres of land over the Blue Hills, joining *Robert Delap*, on the westermost branch of *Big Schuylkill* in *Berks* county."

He gave evidence to prove that a survey was made for him in pursuance of his application on or about the year 1769. That evidence consisted of a draft found in the office of the deputy surveyor of this county, without date or name—a memorandum book, called a book of field notes, indorsed *Jasper Scull's* book, No. 23, found in the office of the deputy surveyor of *Berks* county, in which is a memorandum of an application in the name of *Eronamus Henning.*

The entries in *Jasper Scull's* book were as follow:

| "ERONAMUS HENNING, 300 acres of land the other side of the Blue Hills, joining *Robert Delap*, and on the westermost branch of *Schuylkill.* | "Eronamus Henning, | 5 | 0 | 0 |
| | Nicholas Hollar, - | 4 | 12 | 0 |
| | George Crest, - | 1 | 10 | 0 |
| | George Shoemaker, | 2 | 2 | 0 |
| | | 13 | 4 | 0 |
| | Jacob. Kichen, - | 2 | 0 | 0 |
| | | 15 | 4 | 0 |
| | Jacob Kantner, - | 2 | 0 | 0 |

The defendants also gave in evidence an order of survey, directed to *Andrew Lyttle*, without date, also found in deputy surveyor's office. And a survey by *William Wheeler*, dated the 13th of October, 1788, which he called a re-survey.

(Star *v.* Bradford.)

The survey returned by *Wheeler*, in 1788, was made according to the lines made on the ground in 1769.

The defendants further gave in evidence to shew that the application of *Eronamus Henning* accurately described the land in question, that it was surveyed on the westermost branch of *Big Schuylkill*, adjoining a tract of land which had been surveyed before 1769, which was claimed, and went by the name of *Robert Delap's* land, who was then in full life.

Their title to the land in question was regularly brought down from *Eronamus Henning*, and they and those under whom they claim, had been in possession since 1793.

Certificates from the land office, shewing that there was no office right in the name of *Robert Delap*, were given in evidence by the plaintiff.

The court in answer to points, put by the defendant's counsel charged the jury, among other things, as follows:

"An application is the mere inception of a title—and unless the applicant took the other steps required by rules in force under the proprietaries applicable to such inceptions of title, he acquired no right. It was the duty of the person entering the application to shew the land applied for to the deputy surveyor, and to procure it to be surveyed. Whether *Henning* procured the land in question to be surveyed on his application, the jury will decide. It was also the duty of the person entering the application, to pay the surveying fees to the deputy surveyor, before the payment of which the deputy surveyor was not bound to return the survey. There is in this case no evidence that *Eronamus Henning*, paid the surveying fees to the deputy surveyor, and consequently the deputy surveyor was not bound to return the survey, and the survey in fact not having been returned until after the plaintiff obtained his warrant and patent, *Eronamus Henning*, and those claiming under him, must be postponed. The delay in the return of the survey from 7th April, 1769, to 1st October, 1784, is unreasonable and is so pronounced as matter of law. It was incumbent on defendant to shew that this delay was not occasioned by his negligence or default; he has not shewn that he did what was required of him to entitle him to a return of the survey—and the return of survey having been delayed an unreasonable time, the commonwealth was justifiable on the 1st of October, 1784, in selling the land to the plaintiff; and having in fact sold it, the defendant must be postponed. The defendant's claim under the application is lost or abandoned by his neglect to pursue it—I say lost or abandoned by his neglect to pursue it, because there is no proof, that he took any step in pursuance of it beyond getting a survey made, until the plaintiff had purchased the land in 1784. The getting

(Star *v.* Bradford.)

the land surveyed was not a sufficient pursuit of his claim.   Had he paid the surveying fees, and thus entitled himself to a return of the survey, he might have stood upon better footing—but he did not, and therefore has not shewn that he pursued his application with due diligence.

"If the jury believe from the evidence that the plaintiff obtained his warrant and survey in 1784, his patent in January, 1786; that the defendant's order to survey his application was mislaid with the survey upon it by the want of order and care in the office for a time, which led him to get another order of survey on or about the year 1784, on which a re-survey was made in 1788, and returned into the land office, and that *Henning* sold his right to *Jacob Artz,* who sold to *Wheeler,* and *Wheeler* to *Jacob Fox,* who in March or April, 1793, built a house and stable, planted apple, peach and cherry trees, made meadows, and continued to live on and improve it, till this time—that plaintiff brought this suit to August term, 1809, in *Berks* county, which was tried and verdict and judgment against him in 1812, in *Berks* county, on which the plaintiff took a writ of error to the Supreme Court, where the judgment was reversed 29th May, 1831.   That he never brought the records from the Supreme Court to the Common Pleas of *Berks* county, nor to the Common Pleas of this county, till 20th June, 1829; then he filed 28th June, 1826, a certificate of Clerk of Common Pleas of *Berks* county, after which he took a rule to plead in four weeks or judgment, 9th July, 1829, continued in October, and also in December by consent; 31st March, 1830, continued by defendants on payment of the costs of the term, and rule to take depositions by defendants.   If the jury should believe the facts stated in this proposition, the suit was not thereby in law discontinued or retracted, and although the land has been improved by clearing and building, the action was not given up, relinquished or abandoned, and the statute of limitations does not bar the plaintiff's claim."

The following errors assigned, embrace the points made in argument, and considered by the court:

1. The court erred in charging the jury, that although they found defendant's application accurately descriptive of the land called for, that it was duly filed with the deputy to be surveyed; that he made an actual survey by regular corners, distances and line trees, regularly marked on the ground in 1769, and that the draft thereof was filed in the deputy's office, and thence brought before them, and that there was in the deputy's book, in which defendants application was entered, this entry: "*Eronamus Henning* £5," along with other entries; yet in point of law it must be postponed and give way to the plaintiff's title, commencing on the 1st

(Star *v.* Bradford.)

of October, 1784; because defendant's survey was not returned in-
to the land office before that period.

2. The court erred in charging the jury, that there was no evi-
dence, nor any ground from which they could presume that the
surveying fees were paid by the defendant, or those under whom
they claim, and therefore the deputy was in no default in not
making a return into the land office, and the plaintiff was in law
entitled to recover.

3. That the court erred in charging the jury, that the matters
contained in the first and second errors assigned above, were descrip-
tively matters of law for the court to decide, and that the matters
in the said errors assigned taken collectively, were not matters for
the consideration and determination of the jury, but matters of law
for the consideration and determination of the court, and that the
law arising upon them, was against the defendants and in favor of
the plaintiff, and that they should find accordingly.

*Hopkins* for the plaintiff in error.

The application under which the defendant claimed was precise-
ly descriptive, and the court leaving this point to the jury, and as-
suming it to be true, instructed the jury that the delay in the re-
turn of the survey upon it, in law, postponed the title of the de-
fendants to that of the plaintiff. And upon this point the case main-
ly rests.

Under a precisely descriptive warrant or location, the title vests
from the date of the warrant or application, if due diligence is used
in obtaining a survey; and where a survey is made upon it, before
the date of a warrant under which an opposing title is claimed, it
would prevail although that survey had not been returned. *McKin-
ney* v. *Houser*, 2 *Smith*, 190. *Lauman* v. *Thomas*, 4 *Bin.* 51.

This is also the case where the warrant or application is descrip-
tive with such reasonable certainty as is sufficient to designate the
land intended to be surveyed. If the warrant give but a loose de-
scription, allowing a scope of several miles, the title does not attach
until survey. And in the case of shifted warrants or locations,
when the survey is made on land different from that described, it
has no effect, except as against those who have notice of it, until
the survey is returned into the office, and the acceptance of it by
the surveyor general. 4 *Bin.*, 51. *Moore* v. *Shaver*, 6 *Serg. &
Rawle*, 130. A survey on the ground is always notice, and that too
even in the case of a loose warrant or application.

In *Maus* v. *Montgomery*, 15 *Serg. & Rawle*, 224, the cases of
*McKinney* v. *Houser*, and *Lauman* v. *Thomas*, are declared to
be land-marks; and the principles therein established and asserted

(Star *v.* Bradford.)

to be the settled law of the land, and to permit them to be disturb-
ed now would be to unsettle titles, and introduce confusion.

At the time when the location under which the defendants claim-
ed issued interest was required to be calculated on the purchase mo-
ney from six months after the date. This is a matter between the
government, and the applicant. The title is secure in his hands,
subject only to the payment of the purchase money. No rigid
rule was adopted in regard to the payment of the principal.

In the same spirit of liberality the legislature have extended the
time of payment from time to time. The Commonwealth alone,
then, have an interest in this return of survey, and the Common-
wealth has not thought proper to require or enforce. The plaintiff
nor any stranger has any thing to do with it, and can derive no ad-
vantage from the omission to make it. The survey on the ground
is notice to all the world, and gives to the state the right to enforce
the payment of the purchase money. *Hubley* v. *Vanhorn,* 7 *Serg.
& Rawle,* 185. *Blaine* v. *Crawford,* 1 *Yeates,* 289. *Biddle* v.
*Daugal,* 5 *Bin.,* 148.

Then it appears most abundantly, that the survey on the ground
completes the title; it must be immaterial of what time the survey
is returned. And when a warrant or location is descriptive and a
survey is made upon it, the land is no longer subject to appropria-
tion; it is withdrawn from the general mass; and it is the duty of
strangers, who wish to acquire title, to inquire in the survey-
or's office of the proper county, and they cannot relieve themselves
from the effect of that which has been adjudged to be notice. 2
*Smith,* 153. *McDowell* v. *Young,* 12 *Serg. & Rawle,* 115, 129.
In the case of *McDowell* v. *Young* the application was precisely
descriptive and dated 1766; and the survey on it was not returned
until 1821.

The period relied upon as creating the presumption of abandon-
ment, in consequence of the survey of the defendants not having
been returned, embraced the period of the revolutionary war, du-
ring which he contended all presumption arising from the lapse of
time should be suspended. From 1776 to 1781 the land office was
closed. During that time no laches could be imputed to any one.
*Enter arma silent leges.*

By the act of the 27th of *November,* 1779, *Purdon,* (edition
of 1830,) 762, section 7, any location filed in the land office before
the 4th day of July, 1776, "was confirmed, ratified and established
forever;" and by the 10th section of the same act, the arrears of
purchase money due on purchases from the proprietaries, "shall
be accounted" due and payable to the Commonwealth. This he
contended was a legislative determination that titles should not be
affected by the lapse of time during the revolution.

In opening the land office, by the act of the 9th of April, 1781, sections 5, 6 and 7, the legislature have declared that in all cases, where surveys have not yet been made, or returned, on any grant, warrant or location, issued before the 10th of December, 1776, on paying one-third of the purchase money, within the space of one year from passing the act, the owner shall be entitled to an order to the surveyor-general to have the same surveyed, and returned; and in case of a failure to pay the purchase money, the mode of enforcing it is pointed out by the act; and solves all difficulty as to the mode of getting the purchase money where the survey of land has not been returned.   By the act of the 5th of April, 1782, the time of returning surveys faithfully and regularly made is extended for such further period, as to the surveyor-general shall seem just and reasonable, and the owners of office rights are expressly protected by that act from loss or damage by reason of neglect in not having the returns, &c. of surveys made.   It was not in the character of a fostering government to destroy the rights of individuals by the imputation of laches during that portentous period. *Purdon,* 515, 516.

In the same spirit the legislature suspended the statute of limitations, as to all debts or contracts not barred, on the 1st of January, 1776, between that date and the 21st of June, 1784.   Act of 21st June, 1781, *Laws of Pennsylvania,* (McKean's edition,) 493. *2 Laws of Pennsylvania,* (Dallas' edition,) 91.

If personal estate, and contracts were thus protected during this period, *a fortiori,* should the same protection be extended to titles to real estate.   In analogy to these acts of the legislature, it was decided that the presumption of payment of a bond, arising from length of time, should be suspended between the 1st of January, 1776, and the 21st of June, 1784. *Fleeson's executors* v. *King,* 1 *Yeates,* 344.

But this delay in making the return of survey, if it operated at all upon the title of the defendants, was not a question of law for the court, but should have been submitted, with all the attending circumstances, as a question of fact for the decision of the jury. *Simon's executor* v. *Shaffer,* 5 *Serg. & Rawle,* 215.   The case of *Chambers* v. *Miflin,* 1 *Penn. Rep.,* 74 refers, he contended, to surveys made since 1790.

The court erred in charging the jury that there was no evidence of the payment of the surveying fees; the lapse of time, connected with the entry in *Scull's* book, was evidence to prove payment; and should have been submitted to the jury as such.

He contended that the omission and neglect of the plaintiff, after the reversal of the judgment in this case in 1813, to prosecute his suit, until 1829, amounted to a retraction of that suit, and con-

nected with the possession of the defendants conferred upon them the protection of the statute of limitations.

When a person, having recovered in ejectment, neglects to enforce it within the period laid in his demise, his right of entry under that judgment, is altogether gone; and if there have been an adverse possession for twenty years, during which such judgment was recovered, it will not avail him to take the case out of the statute of limitations. *Beekman* v. *Havyland,* 15 *Johns. Rep.* 229. The remitter of the record, which is part of the judgment of reversal, where that judgment is regularly entered, is only on payment of costs; the defendants were not bound to pay these costs; the default is therefore in the plaintiff, and he must be affected by it. He referred also to *Ruggles* v. *Keeler,* 3 *Johns. Rep.,* 267. *Fraley* v. *Nelson,* 5 *Serg. & Rawle,* 23.

*Buchanan* for the defendant in error,

Denied that the location was descriptive, or that there was evidence of any survey having been made upon it; but as this is assumed by the court, they must be taken as established, and the case then presents the question, whether a neglect to pay the surveying fees, and procure a return of the survey within a reasonable period, creates an abandonment of the title, in favor of an intervening claim. It is admitted that when the location or warrant is descriptive, and a survey is made upon it, in a reasonable time the title vests from the date of the warrant or location; but this does not decide the point presented; for it is "added or understood, provided it is otherwise followed up with reasonable attention." *Chambers* v. *Miflin,* 1 *Penn. Rep.,* 78.

1. The location in this case was not followed up with reasonable attention.

2. The court under the circumstances had a right to decide the question as a matter of law.

A location is an application made by any person or persons for land in the office of the secretary of the late land office of Pennsylvania, entered in the books of the said office, numbered, and sent to the surveyor-general's office. 2 *Smith,* 7. This is the definition given by the act of the 25th of June, 1781. At the time of filing such application seven shillings only were paid, and surveys were required to be made and returned within six months, and the whole purchase money paid at one payment, and a patent taken within twelve months, with interest from six months after the date of the application. And in case of failure on the part of the applicant, the application was declared to be void, and the proprietaries at liberty to dispose of the land to any other person whatever. 2 *Smith,* 168. It is not pretended that the proprietaries enforced

this system as here laid down, or that they ought; but it shows how they regarded this shadow of a title. It is much less substantial than a warrant; for on that purchase money is paid. The case of *Miflin* v. *Chambers* was the case of a warrant, and that case decides the point. It is good law, and good common sense.

Here the location was obtained in 1769, and no act of ownership exercised under it until 1793, a period of twenty-four years. The order of survey was obtained in 1788, a period of near twenty years from the date of the application. During this period no taxes are paid, and but seven shillings of the purchase money, and no survey is returned for twenty years. It cannot be endured, that a person who has obtained a location, shall be permitted to hold it if he pleases, without the payment of the purchase money, and abandon it by never having the survey returned, or not as circumstances may make it expedient or inexpedient. This would be doing great injustice to the commonwealth.

He denied that the case was to be considered as if the defendant's laches ceased in 1784; until 1788 or 1793, that laches was continued.

In the case of *Addleman* v. *Masterson,* 1 *Penn. Rep.,* 454, which is a mere corollary from *Chambers* v. *Miflin,* it was decided that where an application was obtained in 1786, and a survey made on the ground, but the owner of the survey neglected to have it returned, and refused to pay the surveying fees until 1785, when a warrant issued to another, that the title of the warrantee should be prefered. That case was not so strong as the case before the court. It also covered the period of the revolutionary war.

The court were not only right in declaring that the facts in evidence warranted the presumption of abandonment, but they were right in deciding it as a matter of law, not open for the consideration of the jury. The titles to real estate should be governed by uniform rules not subject to caprice, or to be varied by prejudice.

There was no question of fact upon which the jury could pass. There was unquestionably the efflux of near *twenty years,* during which no return of survey had been made, and the title of the plaintiff had intervened. There are cases which show it to be a matter of law to be decided by the court, or a question which they may or may not submit as a matter of fact to the jury, according to circumstances.

In the case of *Duncan* v. *Curry,* 3 *Bin.,* 14, the question was submitted to the jury as a matter of law which concluded the party.

In *Clugage* v. *Duncan,* 1 *Serg. & Rawle,* 111, it is decided that abandonment of a claim is not in all cases a matter of fact; it may be a conclusion of law from the facts. Where the question arises on the effect of mere lapse of time, it is the right of the judge to declare the conclusion of law. So in *Watson* v. *Gilday,* 1 I

(Star *v.* Bradford.)

*Serg. & Rawle,* 340, the court say that when a location is not followed up by a survey in a reasonable time, this is constructive abandonment, and may be decided as matter of law by the court.   In *Barton* v. *Glasgo,* 12 *Serg. & Rawle,* 149, the court declares, as a matter of law, what is not an abandonment.

When the facts are strong the court are justified in deciding laches as a matter of law; but sometimes it is left to the jury under the circumstances; *Mickle* v. *Lucas,* 10 *Serg. & Rawle,* 293, and in the case of *Vickroy* v. *Skelly,* 14 *Serg. & Rawle,* 372, this question is not only decided as a matter of law, but it is adjudged that ten years is too long to delay the return of survey, as against an intervening right.   And in this case, too, the intervening right commenced three years after the commencement of the opposing title.

Eight years would be too long a term to keep back a return of survey. *Bonnet* v. *Devebach, 3 Bin.,* 175.

A man cannot fall asleep, have a half title, and let it lay in a rude and imperfect condition.   The law favors the vigilant.

It is said in *Maus* v. *Montgomery,* 15 *Serg. & Rawle,* 224, that mere lapse of time, unaccompanied by other circumstances, has not been held to divest the right under an application in less than three years.

The court too was right, as a matter of fact, in saying that there was no evidence of the payment of the surveying fees; but if wrong it is not an error in law, but an error in fact of which the plaintiff in error cannot take advantage here. *Biddle* v. *Murphy,* 7 *Serg. & Rawle,* 230.   *Varnum* v. *Kennedy,* 6 *Serg. & Rawle,* 159. *Vickroy* v. *Skelley,* 14 *Serg. & Rawle,* 372.

It cannot be believed that the surveyor should keep the receipt of the individual for whom he made the survey.   If the entry imports any thing it imports a charge.

The land office was only closed from 1776 to 1781.   The return might have been made from 1769 to 1776, and from 1781 to 1788. The office was open for fourteen years, during which the return might have been made, and no steps were taken to have the return made.

It has not yet been decided what is the proper time within which the return must be made, but a rule may be established by analogy to the limitation in the act of the 26th of March, 1785, which provides that no person who claims possession of land, upon any prior warrant, whereon no survey has been made, shall enter or bring an action to recover the same, unless he, or those under whom he claims, has had the quiet and peaceable possession of the same within seven years before such entry, or bringing such action. *Purdon,* (edition of 1830,) 584.

(Star *v.* Bradford.)

The opinion of the court was delivered by

Rogers, J.—The plaintiff below has shewn a title to the property, regularly deduced from the commonwealth, and unless the defendant has exhibited an earlier and better title, he is entitled to recover. The defendant gave in evidence an application, dated the 9th April, 1769, on which a survey was made, but at what precise time does not appear, and which was returned into the surveyor general's office, sometime in the year 1788, after which in 1793, he took possession of the premises.

The plaintiff's title commenced on a warrant dated the 1st October, 1784, on which a survey was made, and returned the 10th October, 1784, the court charged the jury, that the delay in the return of survey, from the 7th April, 1769, to the 15th October, 1784, was unreasonable, and so pronounced it as a matter of law. They ruled that it was incumbent on the defendants to shew that this delay was not occasioned by his negligence or default. They were also of opinion, that he had not shewn that he did what was required of him, to entitle him to a return of the survey. If I understand the plaintiff in error, he controverts the direction of the court on two grounds:

1. He contends that the title of the plaintiff was complete by the survey on the ground, although not returned.

2. He denies that the defendant abandoned his inceptive right to the land, and also says, that whether he did abandon it or not, is a fact for the jury, and not a question of law for the court.

On the first point the plaintiff in error says, the application of the 9th April, 1769, is descriptive; and it must for the purposes of this argument, be conceded that it is; for the court in effect say, that a descriptive application is a mere inception of title, and unless the applicant took the other steps required by the rules in force, under the proprietaries, applicable to such inceptions of title, he acquired no right. They further instruct the jury, that it was the duty of the person entering the application, to shew the land applied for to the deputy surveyor, to pay the surveying fees, and that before payment, the deputy surveyor was not bound to return the survey, that there was no evidence that *Eronamus Henning,* paid the surveying fees, and consequently, the deputy surveyor was not bound to return the survey, and the survey in fact not having been returned until after the plaintiff obtained his warrant and patent, *Eronamus Henning* and those claiming under him must be postponed.

For these principles, the authority of the Supreme Court in the

(Star *v.* Bradford.)

cases of *Chambers* v· *Miflin*, 1 *Penn. Rep.* 74. and *Addleman* v. *Masterson*, 1 *Penn. Rep.* 454, are cited.

A precisely descriptive warrant or application, gives title from its date, a vague warrant from the time of survey, provided it be followed up with reasonable diligence. The mere taking out a warrant or application, and procuring a survey without more gives no title, as is distinctly ruled in the two cases to which I have referred. It is necessary for the warrantee or applicant, not only to have a survey made, but he should have it returned, otherwise, he will be postponed in favor of an intervening right. It would be unreasonable that the commonwealth in such cases, should be prevented from disposing of their lands, particularly in the case of an application, where no money has been paid.

When one party shews an indisposition to comply with engagements, the other is at liberty to consider the contract as at an end, and as this is the law as regards the contracts of individuals, it is equally the rule in the construction of the contracts of the commonwealth with its citizens. The application was made the 7th of April, 1769, and the survey was not returned until after the 10th October, 1784, at which time the title of the plaintiff commenced. This is the case of a title intervening between the survey and the return of the survey. Until the return of the survey, I cannot perceive how the commonwealth can proceed to collect the arrears of purchase money; and this was the opinion of Mr. *Justice Huston*, as expressed in the case of *Chambers* v *Miflin*. How can the officers of government ascertain, whether the owner of the application, although precisely descriptive, has not changed his lines or location, or laid his warrant on some land in the immediate neighborhood, or abandoned it altogether? Could they compel the deputy surveyor to return the survey? He might allege that it was not returned, because the surveying fees were not paid, and under such circumstances, that he is not compellable to return his survey, either at the instance of the owner of the application or warrant, or at the instance of the commonwealth. Until the return of survey, the title has not been thought so complete, as to be incapable of abandonment, by gross neglect or laches, nor has it ever been doubted, that as to that time, the applicant has a right, with which the commonwealth has never attempted to interfere, to change its location, although a survey has been made on the ground. If this be the rule adjudged in the two cases referred to, and in others cited at the bar, it follows as a consequence, that where the applicant has been guilty of gross negligence, the commonwealth may act on the presumption of abandonment, and re-grant the land. This would appear to be the only remedy, for I recollect no instance where the commonwealth has ever attempted to collect the

arrears of purchase money, until the survey has been returned. That there may be cases where this might be done, I will not pretend to deny. The practice has always been to consider the land as derelict, and the subject of a re-sale, and this is a practice which the court should by no means discourage, as it tends to the settlement and improvement of the country. The counsel of the plaintiff in error, founds his argument on this part of the case, on the principle that by the survey on the ground, the title of the defendant was complete. But this is an assumption without any authority to support it, for in addition to a survey, some other step must be taken, indicating an intention to perfect the title. Nor has a single case been cited, determined on a different principle. In *Moore* v. *Shaver*, 6. *Serg. & Rawle*, 180, it was ruled, that on a loose warrant or application, even when so vague as that it cannot be referred to any particular part of the state, the title vests at the time, a survey is made on the ground. But that in case of a shifted location, the commencement of the title is postponed, until the acceptance of the survey.

From this case and others which have been cited, similar in principle, the counsel has inferred, that a survey on the ground, was all that was necessary to perfect the title. In all the cases, it will be found that the survey was actually returned, so that the question of abandonment from negligence, did not arise. The great object of the court was to ascertain when the survey was made, and if returned in due time; from what period the title commenced, and in those cases, the court took the distinction between a shifted location, and a warrant or application which was loose as contradistinguished from a descriptive warrant or location.

A descriptive warrant commences from its date, a loose warrant from the survey, and a shifted warrant from the acceptance of the survey; but in each it is indispensable, not only that there should be a survey, but that the survey should be returned within a reasonable time.

I wish now to be understood, as speaking of a case where no steps have been taken, except making the survey; for if the owner of the application had, in addition, taken possession of the land, and made improvements upon it, that would present a different question. As a general rule, then, it is necessary that the survey should be returned; but sometimes the omission may arise from the negligence of the deputy surveyor. Where this appears, the rights of the applicant shall not be postponed, even in favor of an intervening right; and this is placing the owner of the application, on as favorable ground as he has any right to require. But as the law enables him to excuse the omission to return the survey, it at the same time throws the proof on him, and makes it his duty to show, that the

(Star *v.* Bradford.)

default was not occasioned by any negligence or default of his own. Here, it is apparent, that no return was made until after the plaintiff's title commenced; nor was there any fact given in evidence, from which the jury would have been justified in drawing any other inference, than that the omission to return the survey, arose from the negligence and default of the defendant. It does not appear that the surveying fees were paid, nor is there any evidence whatever of that fact, for the entry in the book of *Jasper Scull,* purports to be a charge, rather than a receipt.

It remains now to inquire, what is a reasonable time, within which a party may return his survey.

In *Bonnet* v. *Deffebach, 3 Bin.,* 183, Mr. *Justice Yeates* says, that he would have no hesitation in saying, that a period of eight years would be too long a time to keep back a return of survey, under the peculiar circumstances of that case, so as to postpone an adverse title, fairly intervening between the survey and return. In *Maus.* v. *Montgomery, 15 Serg. & Rawle,* 224, Mr. *Justice Huston* says, that there is no case where mere lapse of time has been held to divest the right, in less than three years. He thinks a longer period has been allowed. Within what period a party is bound to return his survey, has not been precisely established. Circumstances have induced courts and juries to make different allowances, in different cases. Here a period had elapsed of fifteen years, when the plaintiff's title intervened, and of twenty-four years, until the return of survey.

Making every allowance for the peculiar circumstances arising from the shutting the land office, during the war of the revolution, we are of the opinion, that there was still such neglect as to postpone the defendant's title, in favor of the plaintiff. For my own part, I should be unwilling to extend the term beyond the period of seven years; and eventually, perhaps, that will be the limitation on which the court will settle down, and that in analogy to the 5th section of the act of the 26th of March, 1785.

The court gave it in charge to the jury, that the delay in the return of survey, from the 7th of April, 1769, till the 1st of October, 1784, was unreasonable, and they so pronounced it, as matter of law. As a general rule, the question of abandonment is a fact for the jury, for it is a question of intention, of which the jury alone can judge; which, ordinarily, depends on a great variety of facts. In such a case, it would be error in the court to withdraw from the jury the decision. But when the question is one of time it is a question of law, and it would seem to me, that this is a case of the latter description. There was no fact given in evidence, which in the slightest degree, tended to rebut the legal presumption of abandonment, arising from lapse of time. When there

(Star *v.* Bradford.)

are no disputed facts, it is the duty of the court to instruct the jury in what manner to find their verdict, as, otherwise, uncertainty in titles would be the consequence.    A state of facts which, in the opinion of one jury, would give title, in the opinion of another, would produce a different result.    In the *Lessee of Duncan* v. *Curry*, 3 *Bin.*, 21, Mr. *Justice Yeates*, in the course of his opinion, makes use of this language.    Evidence of abandonment is generally submitted to the decision of a jury, but it may often happen, that instances may occur of such abandonment, wherein the court may feel no difficulty in giving their sentiments to the jury, that the gross delay and laches of the party were conclusive on him. This happened in *Penn's Lessee* v. *Hepburn*, and in *Duncan's Lessee* v. *Willis*, which were cited on the argument.

The law is an inference from facts, and when these are conceded, no dispute can arise which calls for the decision of a jury.    When the question of abandonment arises from gross delay in not returning a survey, and there are no facts which tend to rebut the legal presumption, then it is not only not error to instruct the jury that the law will presume an abandonment, but it is the duty of the court so to direct them, as a conclusion of law.    And this I apprehend is not only the common practice, but is absolutely necessary, to ensure a uniformity of decision, which is essential to the due administration of justice.

On the 15th January, 1812, this action having been tried in *Berks* county, a verdict and judgment was rendered for the defendant, upon which a writ of error was issued to May term, 1812. The 29th May, 1813, the Supreme Court reversed the judgment of the Common Pleas.    The 31st July, 1826, the transcript of the docket entry of the suit in *Berks*, was filed in the prothonotary's office of *Schuylkill* county.    The 28th of July, 1829, the record of the suit, which remained in the Supreme Court at *Lancaster*, was transmitted to *Schuylkill* county.    The 23d of July, 1830, the defendants offered to put in a plea to the jurisdiction of the Court of Common Pleas of *Schuylkill* county, and also to plead that the suit had been abandoned and *discontinued* under the above stated facts.    This plea the court over-ruled, of which the plaintiff in error complains.

On the reversal of the judgment either party might have taken back the record; but as long as it remains in the Supreme Court, the action is still pending.    I know of no rule or practice which gives the effect of a discontinuance to a suit, under such circumstances, and no decision has been cited to this effect.    If the defendant had wished the cause disposed of, he might have taken the record down and had the cause ordered for trial.    Not having taken any steps in the cause, he acquiesced in the delay, and has no reason to complain.

(Star *v.* Bradford.)

We are of opinion on the whole case, that the judgment should be affirmed.*

Judgment affirmed.

———◦———

MORRIS and SMYSER, administrators of EICHELBERGER, against JAMESON.

IN ERROR.

By an agreement under seal two brothers, T. and W., exchange possession of farms which it is supposed their father intends to give them respectively by his will, T. throwing in a part of his own land, (fifty acres.)    The father made his will, leaving to each immediately, or through the intervention of trustees, the farm he had intended for the other, and desired T. to make assurance of the fifty acres pursuant to the agreement.    W. died living the father, who by `codicil, directs his executors to sell the fifty acres, and with the proceeds pay certain notes of W., on which he was indorser, as also a debt due from W. to T., and apply the residue to trusts in favor of W.'s children.    T., after the death of the father, conveys the fifty acres to the trustees of W.'s children. The administrators of W., under an order of the Orphans' Court, sold the fifty acres; in a suit brought by one of the creditors of W. against his administrators, it was held, that W. had no estate in the fifty acres which could be subjected to the satisfaction of his debts.

ERROR to the District Court of *York*, in which judgment had been rendered in favor of the plaintiff, the defendant in error, on the following case stated, in the nature of a special verdict.

* The following opinions of the court in the above case, delivered in 1813, when the Supreme Court reversed the judgment of the Court of Common Pleas of *Berks* county, upon a verdict in favor of the defendants, have been obtained by the reporters, and as they have never been published, and the points involved are of much interest, they are inserted here.

TILGHMAN, C. J.—The plaintiff claimed under a warrant to *Jacob Miller*, dated the 1st of October, 1784, for 400 acres of land, a survey for *Michael Gunkle*, of 421 acres and 116 perches, October 19th, 1784, and a patent to *John Shaeffer*, dated the 10th of January, 1786, on which there is a recital of the conveyance, transferring the title, from the warrantee down to the said *Shaeffer*.    But those conveyances were not produced.

The defendant made title under an application, in the name of *Eronamus Henning*, dated the 7th of April, 1769, for 300 acres of land "over the Blue Hills, joining *Robert Delap*, on the westernmost branch of Big Schuylkill, *Berks* county."    There was no evidence of any order of survey on this application, until after the year 1783, the precise time of issuing this order, was not ascertained; but a survey was made by *William Wheeler*, deputy surveyor, on the 13th of October, 1788.    It was returned by *Wheeler* as a re-survey, and contains 374 acres 31 perches.    Parol evidence was given of the lines of an ancient survey, which must have been made at

51

(Eichelberger's admrs. *v.* Jameson.)

On the 24th of March, 1821, *Frederick Eichelberger* was seiz-
ed in fee of two farms in *York* county, one in the possession of his
son *Thomas Eichelberger*, the other in possession of his son *Wil-*

a time, not far distant from the date of the application. No application, warrant or
survey, in the name of *Robert Delap*, was to be found in the office of the secretary,
or surveyor general—but a paper was offered in evidence, containing a draught of
several adjoining surveys, one of which was in *Delap's* name; this draught appeared
to be the work of *William Scull*, formerly a deputy surveyor in *Berks* county; and
there was evidence which rendered it probable, that it had been among the office
papers of the deputy surveyor of that district. The court permitted it to be given
in evidence, although objected to by the counsel for the plaintiff, and a bill of ex-
ceptions was taken to their opinion. As evidence of *title*, I do not think this paper
was admissible, but as a circumstance throwing light on the description in *Henning's*
application, it was. It is possible that no official survey was ever made for *Delap*,
but that there had been an authorized survey of land intended to be taken up: this
is putting the matter as strongly against the defendant as the case deserves. Yet
still, it might serve to designate the spot on which *Henning* intended to make his sur-
vey, and if it had been made and returned, there is no doubt but the officers of the
proprietaries would have accepted it, the whole truth being disclosed to them; al-
though *Delap* had never applied for the land, which he had intended to take up.
There was no error, therefore, in permitting it to be given in evidence.

There are three errors assigned in the Judge's charge to the jury.

1st. In his saying that the evidence of *John Dreher*, was very important.

2nd. In his not charging that the order of survey issued after the year 1783, on
the application of *Henning*, was *conclusive* evidence that no survey had been made
before.

3d. In his mistaking the nature of *Henning's* application, which was so loose and
uncertain, that under all the circumstances of the case, the title did not attach till
the return of survey.

1. A material inquiry in this cause was, at what time there had been an official
survey on *Henning's* application. When *Wheeler* made the survey in 1788, marks
of an ancient survey were found. The evidence of *Dreher* went to show those
marks, and all that the judge said was, that "the testimony of *Dreher* was very im-
portant to that point." That it was important to that point is evident, and it is also evi-
dent that it was a point proper to be inquired into. This leads to the consideration
of the

2nd Error assigned in the charge: Was the order of survey, after the year 1783,
conclusive evidence that no former order had been issued?

In my opinion, it was strong evidence, but not conclusive. There might have been
a former order issued, the evidence of which had not been preserved in the land of-
fice. The papers of that office have been subject to unsafe keeping, and frequent
removals. The acts of the officers are not to be found in books where every trans-
action was regularly recorded; but the evidence of those acts often rest on detached
papers, preserved in files or bundles, and of course subject to accident and loss. It
would be carrying the case (then) to a dangerous length, to say that because no or-
der of survey was to be found prior to the year 1783, therefore, it must be taken for
granted, that no such order had ever existed.

The 3d error assigned, turns on the nature of *Henning's* application. On this
point, the charge is to the following effect: "If the application be descriptive of the
land in question, and the survey made in fact, before the date of the warrant under
which the plaintiff claims, although not returned, the defendant would be entitled
to retain the land, so if it describes the land with sufficient certainty." It has been
objected that by this charge, the jury might have been led to believe, that if a sur-
vey had been in fact made *without authority* before the date of the warrant, the de-
fendant would be entitled to the verdict. But this is not treating the charge with
that candor and liberality, to which it is entitled. We must not exercise grammatical

(Eichelberger's admrs. *v.* Jameson.)

*liam Eichelberger.* *Thomas* at the same time was seized in fee of one-fourth of 180 acres of land in *Adams* county. By articles of agreement entered into between *William* and *Thomas*, on the

criticism in order to destroy the substance of the opinion. The whole charge is to be taken together, and its import fairly considered. I have no doubt of its true meaning, a survey made by lawful authority was intended; and if the plaintiff's counsel had considered the expressions as doubtful, or equivocal, they ought to have brought the point immediately before the mind of the judge, at the time of the charge, by asking explicitly whether the defendant could support his defence under a survey made without authority. Let us consider, then, the nature of the description in *Henning's* application. "300 acres over the Blue Hills, joining *Robert Delap*, on the westernmost branch of Big Schuylkill." It is loose in the extreme in every part, except the joining of *Robert Delap:* no trace has been found of any right in *Robert Delap*, by warrant, application or survey, in the proprietary's office. Still he might have been owner of a tract taken up by some other person; but I do not find that there was evidence of any person of that name, having owned, claimed or resided upon the land adjoining the defendant's survey, or any kind of evidence on the subject, except the old draft of *William Scull*, which has been before mentioned. Now suppose a man of the name of *Delap*, had caused lines to be run by the deputy surveyor without authority, with a view of entering an application, which he never did enter, that he relinquished his intention, and never had any thing to do with the land. Under those circumstances, ought the location calling for *Delap's* tract, to be considered as such a description as would give title to the defendants immediately on the making of their survey, although that survey was not returned for nearly twenty years afterwards? A thing is certain which may be rendered certain by reference to other things. The reference here, was to *Delap's* tract. But no such tract being to be found in the land office, how were the officers to know of it, and if no such person as *Delap*, lived on the land or claimed it, how were the public to know it? and if it were impossible to obtain a knowledge of the spot which *Henning* meant to appropriate; and the matter remained in this uncertainty for fifteen years, when *Jacob Miller* purchased it of the commonwealth, is it reasonable that he should lose it? What is the use of a description, but to apprise other persons of the situation of the land described? It appears to me that this point was not submitted to the jury, in such a manner as to make them understand the law. They ought to have been told, that if the description was of such a nature as to afford no reasonable means of ascertaining the situation of the land, until the return of survey, in such case, the defendant's title must take date from the time that the survey was returned; because this survey was not returned in a reasonable time. I think, too, that it would have been proper to inform the jury, that they were to judge whether the delay of a return of survey, was not occasioned by the neglect of *Henning*, or those who derived title under him, because it appears very doubtful on the evidence, whether any order of survey was taken on this application, before the year 1783, and if it had been, it might have happened as was frequently the case, that in order to avoid paying the fees and expenses of survey, he suffered the return to be postponed; such serious inconveniences arise from long protracted returns that it should always be inquired, by whose fault the delay was occasioned. We know very well that no more than seven shillings being paid on the entry of an application in the year 1769, the applicant sometimes relinquished the land, and where such was the intention, he ought not to be permitted to revive his claim after the lapse of many years, when the land has become valuable, and another person has taken it up and paid for it. In this part of the judge's charge, then, I think there was error.

But it has been urged, on the part of the defendant, that it appears on the record that the plaintiff showed no title, and therefore the cause ought not to be sent down for another trial. The defect of the title alluded to, is in not producing the deeds of conveyance prior to the patent, which are recited in the patent. These recitals, it is said, are no evidence against the defendants, but that is begging the question in dis-

said 24th of March, *Thomas* exchanged his farm in *York* county, and the undivided one-fourth of the 180 acres of land in *Adams* county, with *William* for his farm in *York* county; the said

---

pute. The defendants claim under the commonwealth. The recitals are the confession of the commonwealth, therefore, they are evidence against the defendants, if their title commences after the date of the patent. If the title of the defendants, then, commence from the return of their survey, the recitals in the patent are evidence against them: so that we are brought back to the point whether, under the circumstances of this case, the title of the defendants takes date from the entry of their application or the return of their survey; my opinion on the whole, is, that the judgment be reversed and a *venire facias de nova* awarded.

BRACKENRIDGE, J.—The principle would seem to be correct, that on a verdict for the defendant, and a writ of error by the plaintiff, where it appears from the record, that no judgment could be rendered for the plaintiff, it will be to no purpose to reverse that for the defendants.    Want of jurisdiction in the court, unlawful cause of action, set forth in the declaration; want of evidence to sustain it, appearing from the facts stated in the plaintiff's bill of exceptions, may effect this.    The plaintiff in his bill of exceptions states an equity out of the commonwealth to a certain *Jacob Miller*, that is sufficient to defeat the patent of the plaintiff, unless he can show the equity of *Miller* to *be in him the plaintiff.*    The plaintiff must recover by his own strength, and if *Miller's* right is not in him, *it must be against him.*    But he shews the equity of *Miller* to be in him, by shewing it to be in a certain *Gunkle,* and *Gunkle's* right to be in him, the plaintiff. This he shews by recitals in the patent to himself.    Can these recitals be evidence of the transfers so recited?    Let us see how this stands?    An equity in *Miller,* by warrant.    This equity in *Michael Gunkle,* by a *survey* in right of *Jacob Miller;* a patent from the commonwealth to *John Shaeffer,* the plaintiff in right of *Michael Gunkle,* in right of *Jacob Miller.*    Who has a right to question the right of *Miller* being in *Gunkle,* but *Miller* or some one claiming under *Miller?*    And who has a right to question the right of *Gunkle* being in *Shaeffer,* but *Gunkle,* or some one claiming under *Gunkle?*    It is not *Miller,* or any claiming under him, that questions the transfer to *Gunkle.*    Nor is it *Gunkle,* or any claiming under *Gunkle,* that questions the conveyance to *Shaeffer.*

Shall it lie in the mouth of a third person, to say to *Shaeffer,* you have not the equity of *Miller* in you, when the commonwealth, granting the legal title, says: I have seen these conveyances, or other evidences of transfers, and I am satisfied that he has?    But a *third* person might say: I have an equity under the proprietor, the former owner of the land or under the commonwealth, since and *before* the equity of *Miller,* to which your patent from the commonwealth refers.    Shew that, and there is an end of it.    But what have you to do with the chain of title from *Miller* to *Sheaffer,* when the commonwealth, with whom the legal title lay recognizes *Shaeffer* as entitled to the legal estate in right of *Miller?*

It is every day's practice in the land office, that a patent is granted to one, on the inception of a title, or original equity of another; and the courts of law do not inquire why so granted, but at the instance of one who has a right to inquire.    And this must be one who claims under *the same equity.*    The principle that one cannot derive title to himself, by the *recital* of a grant from him who had title, is correct. But it is the person *having title,* that grants here reciting the consideration of the grant to one on an equity to another.    It is sufficient for the grantor to be satisfied, that the equity out of him to A is now in B, and in consideration of this, he makes the legal estate to B.    In whose mouth does it lie, but in that of A, or one claiming under A, to contest this equity, and that the right to receive the legal estate is in B? B must first show to a court of law, an inception of title or equitable interest in A, but what stronger evidence can there be, or at least, what other evidence shall be demanded, but the acknowledgment of him in whom the legal estate is, that the

(Eichelberger's admrs. *v.* Jameson.)

two farms in *York* being those as above mentioned of their father *Frederick.* By the same articles of agreement titles for the exchange of the properties as aforesaid were to be executed on or before the

equitable interest in A, is now in B.   It is A, or those claiming under him, that can alone contest this.

So the commonwealth reciting an equity in *Miller,* would be no evidence of that equity against a third person, claiming an equity also under the commonwealth. But the equity in *Miller* must be shown to be out of the commonwealth, before the equity to him, the third person had attached, because the fact of the equity being out of the commonwealth to *Miller,* and the *date* of that becomes important.   But here the equity to *Miller* by warrant, and the date of that warrant has appeared. This is the doctrine the judge laid down, and I think it is correct.

We proceed, then, to consider the grounds of error, which have been assigned in the judgment for the defendant.   Was it error, to admit a paper purporting to be a draft of lines run, with the name of *Delap* upon it, the application of the defendant calling for *Delap,* as adjoining that, for which he made the application?   It is a paper that bears the marks of age upon the face of it.    I speak of the paper itself, distinct from the lines or writing upon it.    It has an air of antiquity in the texture, and no recent water-marks of modern impression are visible..   But the *ink of the lines impressed upon it,* is faded by exposure to the air, and length of time.   The writing upon it, is proved to be of those long since deceased.  Its decent is through the medium of an office.   It would seem to have once been in the hands of an officer for some purpose.   It is not just the same as if it had been found in *the trunk of an old inhabitant.*   Though even in that case, lines being found upon the ground, corresponding or nearly so, with the *date* of the application, which refers to it, could it be said that it did not contribute some evidence to show the place of the application?   It would seem to me, therefore, that it was admissible, so far as respected boundary.   This being so, the judge would not seem to have erred in considering the testimony of the witness tracing these lines to be of some importance.   I would not reverse for error in the *less* or *more* importance, which he attached to it.   The only question can be, was it evidence, and had some bearing on this case? as evidence of boundary or description, it would seem to be evidence.   An order of survey is not conclusive that it was not in fact a *re-survey;* but it is *presumptive* of it, and will stand until the contrary appears.   The judge, therefore, did not err *in refusing to charge the jury* that it was conclusive.

But it is said that no evidence is shown to rebut the *presumption,* that it was not a re-survey; for it could not be called a re-survey, unless an *official* survey had been originally made.    That it was an official survey we have no evidence, farther than that it was made *about the time of the application.*   It is very clear from the testimony, says the judge, "that a survey had been made of the land in dispute by *somebody,* about the time of the application."   It is not left to the jury to say whether this survey was an official act, made by an authorized agent or otherwise: they had no evidence that it was an official act, but that of being made about the time of the application.    The judge might have it in his mind, and mean to distinguish, and to leave it to them to say, whether they could infer from this circumstance that it was an official act?   But it is not clearly distinguished in his charge, what it was that was left to them; and the material point in this case was, whether the survey was an *official act or not.*   For if not official, *the return* only would be a recognition, and render it of any effect.   His language is, "If the application under which defendants claim, be descriptive of the land in question, and the survey made in fact, before the date of the warrant under which plaintiff claims, although not *returned,* the defendant would be entitled to retain the land."   Now if made *in fact* by proper authority, was the only ground on which, without a return, it could have this effect.   And the single consideration of being made *in fact* by *somebody,* would not be sufficient.   This would not seem to me to have been put so distinctly to the jury by the judge, as to enable them to comprehend the difference.    And yet the difference is immense; and in one

(Eichelberger's admrs. *v.* Jameson.)

1st of April next ensuing. They exchanged possession of the farms in *York* county.

The following provisions, devises and bequests were contained in the will of *Frederick Eichelberger*, dated the 18th of April, 1821, and in the codicils to that will, the first of which was dated on the 21st of April, 1821, and the second on the 12th of April, 1823.

"I give and devise unto my son *Thomas Eichelberger*, and to his heirs and assigns that tenement plantation and tract of land on which my son *William* lived, situate in *Westmanchester* township aforesaid, being about one hundred and sixty or seventy acres, adjoining lands of *David Bailer*, *Casper Loucks*, *Joseph Worley* and others; and I also give unto my said son *Thomas*, his heirs, and assigns, a piece of the tract on which he has lived, twenty-eight acres on the north side of Carlisle Road, which has been marked and divided by consent by my son *Thomas* and my son *William;* but it is now agreed that my son *Thomas* is to give to my son *William* five acres adjoining his strait line up the hill at the upper side, adjoining *Joseph Worley's* land, and for the other ten acres my son *Thomas* is to pay what he may sell the whole land for, to be paid out of the last money which is to be paid to the estate of my son

---

case gives a validity to the survey, *without a return;* in the other the return only, and *receiving it into* the office can be equal to a preceding authority. The counsel would seem to have erred in not putting this distinctly to the judge to say, whether a survey without authority or with. They took it for granted probably that he meant to speak of a survey by *official authority;* and it is probable that he did mean this. But it is not clear from what he said, how the matter was. Shall we reverse, then, because the language of the judge is ambiguous, and it does not clearly appear what was left to the jury, whether the fact of a survey, or that of a re-survey by authority? Of the fact of a survey there would be no question; but of the fact of a *survey by authority* was the only material question which existed, and which we must presume him to have intended to have submitted to the jury. What evidence the jury had of this was very slight; the mere circumstance of which the judge takes notice that *a survey in fact had been made* about the time of the application. However, this is not a motion for a new trial. And it must be an error, manifestly apparent, on which a judgment can be reversed. But there is such a thing as abandoning even *the equity of a survey made by authority,* by not procuring a *return,* and giving publicity to the official act. The commonwealth in such cases might be let in to grant to new purchasers the land, for which an equity had not been followed up, by *occupancy* or other evidence of appropriation. It does not, therefore, absolutely follow that, even supposing a *survey made by authority,* the defendants were, at all events, entitled *to retain the land.* I think the judge erred in not making this a consideration to the jury, or *deciding on it as a question of law, if mere time only was in question in the case.* Unless excused by the war, or other circumstances, I would think the time here sufficient to justify the commonwealth in granting to other purchasers, and taking money for the warrant, ordering a survey, and granting a patent right. If so, the judge erred in laying it down generally that taking the application to be reasonably descriptive, and the jury even to find that the survey was made by authority, before the return, *the defendants would of course be entitled to retain the land.* On this ground, therefore, I am of opinion to reverse the judgment.

Judgment reversed, and *venire facias de nova* awarded.